**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jerome Wayne Wringer, | No. CV-15-02554-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W Colvin, | |
| Defendant. | |

Plaintiff Jerome Wringer seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security (Commissioner) denying his application for supplemental security income and disability insurance benefits. Because the decision of the Administrative Law Judge (ALJ) is supported by substantial evidence and is not based on legal error, the Commissioner's decision is affirmed.

**I. Background**

    **A. Factual Background**

Wringer is 67 years old and has an eleventh grade education. (A.R. 18.) He last worked as an automobile service manager. (Doc. 12 at 1.) The business closed in 2008, and he has not worked since that time. (A.R. 21.) Wringer reported looking for work in March 2012, immediately before he applied for benefits. (*Id.* at 761.) He alleges disability due to chronic back pain, nerve damage, hernia, irregular heartbeat, left eye blindness, sleep apnea, and anxiety. (*Id.* at 18.)

**B. Procedural History**

On March 16, 2012, Wringer applied for disability insurance benefits and supplemental security income, alleging disability beginning March 1, 2008.  (*Id.* at 11.)  On May 14, 2014, he appeared with his attorney and testified at a hearing before the ALJ.  A vocational expert also testified.

On July 25, 2014, the ALJ issued a decision that Wringer was not disabled within the meaning of the Social Security Act.  The Appeals Counsel denied Wringer's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision.  On December 16, 2015, Wringer sought review by this Court.

## II.  Legal Standard

The district court reviews only those issues raised by the party challenging the ALJ's decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole.  *Id.*  In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.*  As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

## III.  Five-Step Sequential Evaluation Process

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process.  20 C.F.R. § 404.1520(a).  The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in

substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity (RFC) and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Wringer meets the insured status requirements of the Social Security Act through December 31, 2013, and that he has not engaged in substantial gainful activity since August 12, 2008. (A.R. 13.) At step two, the ALJ found that Wringer has the following severe impairments: left ear decreased hearing, blindness in left eye, depression, mild cognitive impairment, and anxiety. (*Id.*) At step three, the ALJ determined that Wringer does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (*Id.* at 15.)

At step four, the ALJ found that Wringer has the RFC to perform:

> medium work as defined in 20 C.F.R. § 404.1567(c) with the following additional limitations: frequently climb, balance, stoop, crouch, kneel and crawl; has to avoid concentrated exposure to excessive, loud noise; needs work that is simple, routine and repetitive; work with only occasional interaction with public, coworkers and supervisors but he can still be in vicinity of others; limited depth perception due to monocular vision.

(*Id.* at 17.)  At step five, the ALJ concluded that, considering Wringer's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he could perform.  (*Id.* at 22.)

## IV.  Analysis

Wringer argues the ALJ's decision should be overturned because (1) the ALJ improperly discounted the testimony of treating physician Dr. Robert Rosenberg, and (2) the RFC is not supported by substantial evidence.  (Doc. 12 at 4, 13.)  The Court will address each argument in turn.

### A.  The ALJ Did Not Err in Evaluating Medical Opinion Evidence

The ALJ is responsible for resolving conflicts in medical testimony.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record.  *Id.*  Likewise, an examining physician's opinion generally must be given greater weight than that of a non-examining physician.  *Id.* at 830.  As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion.  *Id.* at 830-31.

Dr. Rosenberg treated Wringer for approximately four years.  On July 13, 2013, he submitted a check-box style medical source statement regarding Wringer's symptoms.  (A.R. 463-66.)  He opined that Wringer could sit, stand or walk for 0-2 hours in an eight-hour workday.  (*Id.* at 464.)  Wringer could rarely lift and carry less than 10 pounds and never carry lift and carry twenty pounds.  (*Id.*)  Dr. Rosenberg opined that Wringer has significant limitations in doing repetitive reaching, handling, fingering or lifting and would be unable to keep his neck in a constant position.  (*Id.*)    In addition, Dr.

Rosenberg opined that Wringer was not able to work full time, that emotional factors contributed to the severity of Wringer's symptoms, that Wringer was only capable of low stress work, and that he would miss more than three days of work per month. (*Id.* at 465-66.) He also found Wringer is unable to stoop, push, pull, and kneel. (*Id.* at 465.) Dr. Rosenberg stated that the basis for his opinion is "patient's response to these questions [and] interview—plus seeing the patient in my office monthly for the past 4 years[.]" (*Id.*)

Dr. Rosenberg's opinion was contradicted by the opinions of Dr. John Vorhies and Dr. Kenneth Glass. Both non-examining physicians opined that Wringer could sit, stand or walk for 6 hours in an eight-hour workday; lift and carry 50 pounds occasionally; lift and carry 25 pounds frequently; and was unlimited in his ability to push and pull. (*Id.* at 67, 83.) In addition, both physicians found that Wringer could frequently climb ramps and stairs; climb ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, and crawl. (*Id.* at 68, 83.) Therefore, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for discounting Dr. Rosenberg's opinion. *See Lester*, 81 F.3d at 830.[1]

The ALJ gave reduced weight to Dr. Rosenberg's opinion because it was a "form consisting largely of checked boxes without further explanation" and the extreme findings "contrast sharply" with the other record medical evidence, including Dr. Rosenberg's own treatment notes. (A.R. 19.) The form contains 25 questions, only one of which calls for Dr. Rosenberg's conclusions regarding his findings. (*Id.* at 465.) Therein, Dr. Rosenberg explained that his findings were based on Wringer's answers to the questions, as well as past visits. (*Id.*) The form, however, contains no clinical

---

[1] Wringer argues the clear and convincing reasons standard applies because Dr. Rosenberg's opinion was uncontradicted by another "examining source"—neither Dr. Vorheis nor Dr. Glass examined Wringer. (Doc. 12 at 7.) But Wringer cites no authority for the proposition that a treating physician opinion may be contradicted only by another examining source. A non-examining physician's contradictory opinion triggers the specific and legitimate reasons standard. *See Lester*, 81 F.3d at 830 ("if the treating doctor's opinion is *contradicted by another doctor*, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence") (emphasis added).

evidence and cites to no prior treatment notes or medical diagnoses. Instead, it appears to be based largely on Wringer's subjective complaints. It is proper for an ALJ to reject medical opinion testimony that consists of a check-off report unsupported by explanation. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (finding the ALJ "permissibly rejected [three psychological evaluations] because they were check-off reports that did not contain any explanation of the bases of their conclusions").[2]

Furthermore, the record does not support such extreme findings. Both Dr. Vorhies and Dr. Glass found far greater functional abilities than Dr. Rosenberg. In addition, one month after Dr. Rosenberg completed the assessment form, his treatment notes indicate that Wringer had normal muscle strength and tone, normal gait, and normal muscle appearance. (*Id.* at 743.) In fact, there were no remarkable physical findings. (*Id.*) Further, the record consistently indicates normal physical findings, including no joint or muscle tenderness, normal muscle strength, and normal range of motion in the extremities. (*See, e.g.*, *id.* at 264 (noting "[f]ull range of motion of all 4 extremities. No joint or muscle tenderness."); 637 (noting "[j]oints are intact and stable," "normal gait," "[n]o midline back tenderness"); 654-55 (noting normal extremities and normal MRI); 665 ("the thoracolumbar spine had a normal appearance, normal gait and muscle strength and tone were normal"); 700 (noting unremarkable physical findings)). Nonetheless, Dr. Rosenberg concluded that Wringer was incapable of standing or sitting more than two hours in a workday; that he could not push, pull stoop, kneel, finger, reach, handle or keep his neck in a constant position; and that he could never lift or carry 20 pounds. The evidence does not support this assessment, and Wringer fails to cite to one treatment note that supports Dr. Rosenberg's physical findings. The Court agrees with the ALJ that the

---

[2] Wringer asserts the form contains several narrative sections where Dr. Rosenberg described Wringer's medical condition. (Doc. 12 at 10.) But the sections cite no medical evidence—Dr. Rosenberg merely cites conclusory diagnoses. Wringer also argues that Dr. Vorheis and Dr. Glass used similar forms. (*Id.*) Indeed, the forms are in the check-box style. Both, however, contain numerous citations to record medical evidence, evidence summaries, and refer to Dr. Rosenberg's own treatment notes. Moreover, both physicians provided adequate explanation for their findings.

evidence is wholly inconsistent with Dr. Rosenberg's extreme findings.[3]

Accordingly, the Court finds the ALJ set forth specific and legitimate reasons supported by substantial evidence for discounting Dr. Rosenberg's opinion. *See Lester*, 81 F.3d at 830.

### B. The ALJ Did Not Err in Formulating the RFC

Wringer argues the RFC fails to account for his mental limitations. (Doc. 12 at 14.) He claims the ALJ failed to fully incorporate the cognitive findings of the state agency reviewing psychologists and Dr. Amy Knapp, examining psychologist. (*Id.*) The Court disagrees.

The ALJ found that Wringer had the mental capacity to perform "work that is simple, routine and repetitive; [and] work with only occasional interaction with public, coworkers and supervisors but he can still be in vicinity of others." (A.R. 17.) This formulation is consistent with the evidence. On October 25, 2012, state agency reviewing physician Dr. Diane Kogut concluded that Wringer was not significantly limited in his ability to carry out very short and simple instructions, work in coordination with or in proximity to others, and make simple work-related decisions. (*Id.* at 69.) She also noted that Wringer was moderately limited in his ability to carry out detailed instructions, maintain concentration and attention for extended periods, and sustain an ordinary routine without special supervision. (*Id.*) As such, she concluded Wringer could perform "work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct and concrete." (*Id.* at 70.) Similarly, in May 2013, another state agency reviewing physician concluded that Wringer could perform the same type of work. (*Id.* at 81.)

On April 30, 2014, Wringer underwent a neuropsychological evaluation with Dr.

---

[3] Wringer points to his hernia surgeries, vascular compromise in the left testicle, and abdominal cramping as evidence in support of Dr. Rosenberg's conclusions. (Doc. 14 at 4.) But these medical conditions occurred in 2007 and 2008, (*see id.*), and there is no evidence that they later affected Wringer's physical functional abilities.

- 7 -

1  Amy Knapp.  (*Id.* at 1934-40.)  Dr. Knapp concluded that tests revealed Wringer had
2  "intact cognitive functioning for his age and education in the areas of overall mental
3  status, reading skills, verbal comprehension, perceptual reasoning, auditory working
4  memory, attention, visuomotor processing, visuocontruction ability, and language."  (*Id.*
5  at 1937.)  In addition, "[s]ignificant and profound cognitive impairment was found in the
6  areas of visual memory and verbal recognition ability."  (*Id.*)  Consequently, Dr. Knapp
7  concluded that Wringer suffered from "mild cognitive impairment," but that "[f]urther
8  monitoring of his cognitive disruption is needed to better determine whether his cognitive
9  decline is related to a neurological or medical condition, or is better accounted for by his
10 significant anxiety and other mental health concerns."  (*Id.* at 1937-38.)  She
11 recommended Wringer adhere to a regimen of physical exercise and mind stimulating
12 activities, such as crossword puzzles.  (*Id.* at 1939.)

13 "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical
14 evidence," *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), and there is no
15 requirement that the RFC mirror any specific medical opinion, 20 C.F.R. § 404.945(a).
16 Furthermore, "[w]here the evidence is susceptible to more than one rational
17 interpretation, it is the ALJ's conclusion that must be upheld."  *Morgan v. Comm'r of*
18 *Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

19 Here, the Court finds the ALJ's interpretation of the medical evidence is
20 reasonable, and thus the RFC is supported by substantial evidence in the record.
21 Notwithstanding his cognitive limitations, both state agency reviewing physicians found
22 Wringer capable of simple, routine work with little interpersonal contact.  Dr. Knapp's
23 conclusions support this finding, and the ALJ accounted for Wringer's mental limitations
24 in the RFC, including the limitation that Wringer be limited to occasional contact with
25 other people.  Other than Dr. Rosenberg's medical opinion, to which the ALJ assessed
26 reduced weight, there is no evidence suggesting Wringer cannot follow simple
27 instructions, perform routine and repetitive work, and occasionally act with other people.
28

1. Accordingly, the Court will not disturb the ALJ's decision.[4]

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **AFFIRMED**. The Clerk shall enter judgment accordingly and terminate this case.

Dated this 27th day of July, 2016.

Douglas L. Rayes
United States District Judge

---

[4] Wringer argues that the RFC fails to account for Dr. Kogut's conclusion that Wringer be limited to "simple, direct and concrete supervision." (Dc. 12 at 16.) But the RFC limits Wringer to simple work with occasional contact with supervisions. It can be inferred that simple work only requires simple and concrete supervision to perform. This argument is unpersuasive.